**Tagged for Publication**



**ORDERED in the Southern District of Florida on January 25, 2011.**

John K. Olson, Judge
United States Bankruptcy Court

___

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov**

**In re**:

Lucely **Zaldivar**,

        Debtor.
_____/

Case No.: 10-34719-BKC-JKO

Chapter 13

### ORDER GRANTING DEBTOR'S MOTION TO VALUE [ECF No. 24]

This matter came on for preliminary hearing December 8, 2010. The parties agreed to a valuation of $157,630.00 for the Debtor's principal residence, 237 SW 4th St., Dania, FL 33004, but dispute whether that value is relevant for purposes of this motion. The property is a duplex, the Debtor resides in the South unit, and the Debtor rents the North unit to a third party.

I invited briefing on the issue of whether this motion seeks to "modify the rights of holders of . . . a claim secured only by a security interest in real property that is the Debtor's principal residence" because, if so, the requested relief is prohibited by 11 U.S.C. § 1322(b)(2). The parties submitted their briefs on January 3, 2011.

There is a split of authority regarding whether this Debtor's situation is one where cram-down is prohibited by § 1322(b)(2). Aurora Loan Services argues that cram-down is inappropriate because:

(1) its claim is secured only by a security interest in real property;

(2) the real property securing the claim (or its southern half anyway) is occupied by the Debtor as her principal residence;

(3) § 101(13A) defines "debtor's principal residence" as " . . . a residential structure, including incidental property, without regard to whether that structure is attached to real property [and] includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer[;]"

(4) § 101(27B) defines "incidental property" with respect to a debtor's principal residence as " . . . property commonly conveyed with a principal residence in the area where the real property is located[.]"

In other words, Aurora Loan Services would have me find that the North duplex unit is incidental property conveyed along with the South unit (where the Debtor resides).

To support its position, Aurora cites *In re Macaluso*, 254 B.R. 799 (Bankr. W.D.N.Y. 2000), which held that the anti-modification provision of § 1322(b)(2) applies to any property that is used as a debtor's principal residence, notwithstanding other uses of the property securing the mortgage. The *Macaluso* court focused on the word "only" as an adverb modifying "secured," such that the provision is not limited to property that is used exclusively as a debtor's principal residence. The problem with the *Macaluso* approach is that it could conceivably be applied to, for example, a large factory in which a debtor maintains a small apartment as his or her principal residence. This result would be the tail wagging the dog.

Other courts have taken the exact opposite view, holding that a claim secured even in part by real property that is not a debtor's principal residence is subject to strip-down. *See Scarborough v. Chase Manhattan Mtg. Corp.*, 461 F.3d 406, 414 (3d Cir. 2006); *see also Lomas Mtg., Inc. v. Louis*, 82 F.3d 1 (1st Cir. 1996). The problem with this approach is that it would permit security interests to be modified on a debtor's primary residence when the debtor decides to rent out a garage apartment or convert a basement into a rentable apartment.

A more reasoned approach analyzes the facts of each case to determine whether strip-down is prohibited by § 1322(b)(2). *See In re Brunson*, 201 B.R. 351, (Bankr. W.D.N.Y. 1996). The *Brunson* court eschewed a bright-line rule in favor of a totality of the circumstances test:

> The Court must focus on the predominant character of the transaction, and what the lender bargained to be within the scope of its lien. If the transaction was predominantly viewed by the parties as a loan transaction to provide the borrower with a residence, then the antimodification provision will apply. If, on the other hand, the transaction was viewed by the parties as predominantly a commercial loan transaction, then stripdown will be available. Such ruling serves the Congressional intent of encouraging home mortgage lending, as illuminated by the Supreme Court in *Nobelman*.

*Id.* at 354 (referring to *Nobelman v. Am. Sav. Bank*, 508 U.S. 324 (1993)). Because a loan is priced according to the risk of the transaction, it makes a good deal of sense to look at the substance of the bargain between the parties to determine whether strip-down is prohibited by § 1322(b)(2). Because the entire point of the anti-modification provision of § 1322(b)(2) is to "encourage the flow of capital into the home lending market" by reducing risk to mortgagees, *Nobelman*, 508 U.S. at 332, I find that the predominant character of the transaction governs whether the anti-modification provision applies.

Aurora argues that, even under this case-by-case approach, the Debtor should not be allowed to strip down the mortgage because Paragraph 6 requires the Debtor to use the property as her principal residence. *See* [ECF No. 55], at 4-5. But the 1-4 Family Rider attached to the mortgage

-3-

explicitly deletes Paragraph 6 such that there is no owner-occupancy requirement. *Compare* [ECF No. 55-1], at 8 *with* [ECF No. 55-1], at 22. Because the Debtor is not required by the mortgage documents to occupy the property at all, the predominant character of this transaction cannot be "predominantly viewed by the parties as a loan transaction to provide the borrower with a residence." *Brunson*, 201 B.R. at 354. The predominant character of this transaction is accordingly that of a commercial loan transaction such that lien strip-down is not prohibited by § 1322(b)(2). The Debtor has cited ample authority to support strip-down in this situation,[1] the parties have agreed to a valuation of $157,630.00 as of the petition date, and it is accordingly ORDERED that:

(1) the Debtor's motion to value **[ECF No. 56]** is **GRANTED**;

(2) the value of the property is ADJUDGED to be $157,630.00 as of the petition date;

(3) the evidentiary hearing scheduled for January 27, 2011 is CANCELLED.

# # #

Copies to: All registered interested parties.

---

[1] *See* [ECF No. 56], at 2 (citing *Scarborough v. Chase Manhattan Mortgage Corp. (In re Scarborough)*, 461 F.3d 406, 408, 412–13 (3d Cir. 2006) (permitting strip-down on a two-unit property in which the debtor resided); *Chase Manhattan Mortgage Corp. v. Thompson (In re Thompson)*, 77 Fed. Appx. 57, 58 (2d Cir. 2003) (permitting strip-down on a three-unit property in which the debtor resided); *Lomas Mortgage, Inc. v. Louis*, 82 F.3d 1, 7 (1st Cir. 1996) (permitting strip-down on a three-unit property in which the debtor resided); *First Nationwide Mortgage Corp. v. Kinney (In re Kinney)*, No. 3:98CV1753(CFD), 2000 U.S. Dist. LEXIS 22313, *11–13 (D. Conn. Apr. 12, 2000) (permitting modification of a two-unit property in which the debtor resided); *In re Stivender*, 301 B.R. 498, 500 n.2 (Bankr. S.D. Ohio 2003) (permitting bifurcation on a two-unit property containing the debtor's residence); *Enewally v. Wash. Mut. Bank (In re Enewally)*, 276 B.R. 643, 652 (Bankr. C.D. Cal. 2002) (holding a mortgage on a rental property that is not the debtor's residence may be modified); *In re Kimbell*, 247 B.R. 35, 38 (Bankr. W.D.N.Y 2000) (permitting bifurcation on a two unit property containing the debtor's residence); *Ford Consumer Fin. Co. v. Maddaloni (In re Maddaloni)*, 225 B.R. 277, 278 (D. Conn. 1998) (permitting bifurcation on a two-unit property containing the debtor's residence); *In re Del Valle*, 186 B.R. 347, 348–50 (Bankr. D. Conn. 1995) (permitting modification of a two-unit property, where the debtor lived in one unit and rented the other); *Adebanjo v. Dime Sav. Bank, FSB (In re Adebanjo)*, 165 B.R. 98, 100 (Bankr. D. Conn. 1994) (permitting bifurcation on a three-unit property containing the debtor's residence); *In re McGregor*, 172 B.R. 718, 721 (Bankr. D. Mass. 1994) (permitting modification of a mortgage of a four-unit apartment building in which the debtor resided); *Zablonski v. Sears Mortgage Corp. (In re Zablonski)*, 153 B.R. 604, 606 (Bankr. D. Mass. 1993) (holding that a mortgage encumbering a two-family home was not protected from modification); *In re McVay*, 150 B.R. 254, 256–57 (Bankr. D. Or. 1993) (failing to protect a mortgage encumbering a bed and breakfast, which was the debtor's principal residence but which had "inherent income producing power," from modification)).